SAFECO LEASING, INC., Plaintiff,

v.

GATEWAY INTERNATIONAL CO. et al., Defendants.

Civ. A. No. 79–1052–A.

United States District Court, E. D. Virginia, Alexandria Division.

Oct. 9, 1980.

---

Paul Vance Hartke, Falls Church, Va., for plaintiff.

Douglas E. McKinley, Alexandria, Va., for Gateway Intern'l, Baumgart and Del Guidice.

## MEMORANDUM OPINION AND ORDER

OREN R. LEWIS, Senior District Judge.

Safeco Leasing, Inc. brought this diversity action against Gateway International Co.

---

and three of its officers for $250,000 for services rendered in arranging for the sale or lease of a jet aircraft to the Guatemalan national airline (Aviateca).

The plaintiff also alleges that the named defendants conspired to defraud it of its claimed commission.

The defendants answered, denying that they entered into any oral or written contract with Dr. Leonard and/or Safeco–they also asserted that the plaintiff did not in fact arrange for or procure the lease of the aircraft in question to Aviateca.

The case was heard by the Court without a jury–at the close of the plaintiff's case, the three individual defendants were dismissed without objection. There was no proof that any of the defendants had conspired to defraud the plaintiff of its claimed fee.

The transcript of the proceedings and the remaining defendants' post–trial brief have been filed–the case is now ready for disposition.

The issue confronting the Court in this case is simply one of fact; *i. e.*, whether or not Gateway International orally agreed to pay Safeco Leasing $250,000 if they sold or leased the B–727 aircraft to Aviateca.

Safeco's claim is based on an express oral contract–not on *quantum meruit.*

The burden is on the plaintiff to prove its claim by a preponderance of the evidence– this it has failed to do.

The uncontradicted evidence discloses that the plaintiff's counsel sent letters to Gateway on January 23, 1979 and March 2, 1979–claiming that Gateway owed Rene Leonard a brokerage fee–in May of 1979, Rene Leonard filed suit against the named defendants in the United States District Court for the District of Columbia claiming that he (not Safeco Leasing) was the entity to whom Gateway had agreed to pay the claimed $250,000 brokerage fee.

Safeco Leasing, Inc.–not Rene Leonard– is the named plaintiff in this suit.

Safeco alleged in the original complaint that:

It entered into an agreement with the defendants, and each of them, whereby plaintiff was to secure the sale or lease of a certain B–727 aircraft for and on behalf of the defendants, and each of them, in consideration for which plaintiff was to receive a fee in the amount of $250,000 for said services.

In its amended complaint, Safeco alleged that:

On November 16–21 and 28, 1978, it entered into an oral agreement with defendants, and each of them, whereby the plaintiff was to secure the sale or lease of a certain B–727 aircraft owned and/or allegedly owned by the defendants, and each of them, for and on behalf of the defendants, and each of them, to Aviateca Airlines in Guatemala, and under the terms for and in consideration of which the plaintiff was to receive a fee in the amount of $250,000 for said services; that said agreement was for a period until said aircraft was sold or leased by said Aviateca.

The plaintiff further alleged that:

It had duly performed said services for the defendants, and each of them, as a broker and/or finder for the sale or lease of said B–727 aircraft and, in fact, the lease form used in said transaction was provided by plaintiff.

The uncontradicted evidence further disclosed that Eastern Airlines had sold a B–727 aircraft to Charlotte Aircraft Corporation for the base price of $5.2 million, adjustable upward depending on engine and airframe hours–Charlotte assigned its purchase contract to Gateway.

Gateway offered to sell this aircraft to all the major airlines, including Aviateca, by Telex, on September 13, 1978–Aviateca did not respond directly.

Charlotte told Gateway on November 6, 1978 that Aviateca was interested in the aircraft, and that the man to contact was Mr. Burt Agardy of Boreas International.

Gateway contracted to sell the airplane to Togo–this contract fell through.

Gateway eventually sold the B–727 to Aircap, Incorporated–they sold it to Gateway International Leasing Co., who leased it to Aviateca in January of 1979.

Dr. Leonard came into the picture in mid–September of 1978, when Manuel Ramos, Aviateca's Miami representative, sought his help in locating a B–727 that could be leased by Aviateca.

Ramos made it clear that Aviateca could not pay any brokerage or commission fees—that would have to come from the seller.

Leonard called and told him he had found out through some contacts that the Eastern B–727 that Gateway had acquired from Charlotte was for sale or lease, and that he was going to get all the details.

Colonel Sosa, the President of Aviateca, wrote back and told Dr. Leonard to get everything so that they could start negotiating.

Dr. Leonard arranged a meeting with Gateway on November 16 to discuss the matter–Ramos went with him—Colonel Sosa had told him to go as an informant and not to reveal anything–not to even talk to them; just to find out the details concerning the aircraft.

Prior to this meeting, sometime in mid–October, Dr. Leonard formed Safeco Leasing, Inc.–he was the sole stockholder. The charter for this corporation was granted on December 4, 1978–the officers and directors were elected on December 11, 1978.

The parties do not agree as to what was said or done at the November 16 and November 21 meetings.

The Gateway people said Dr. Leonard was interested in buying the B–727 they had purchased from Charlotte. They told him they were interested in selling this airplane to anyone who had the financing for $5.5 million, but that they could not enter into any firm contract until their contract with Togo was cancelled. They expected this to happen within the next two or three days–they said that Leonard assured them he could finance some $3.2 million of the purchase money through his Miami bank, but would need some help in financing the balance. Gateway agreed to let him know if the Togo agreement cancelled out and to give him first refusal on the aircraft if he could get his finances in shape by the following week.

The Gateway people claimed nothing was said about a fee or commission–that Leonard and/or Safeco was going to buy the aircraft and lease it.

Leonard claims that he told the Gateway people during the first meeting that Aviateca could not pay a procuring fee and that they had to protect him for his fee–that he was a "hustler" who was not doing this for free–he said he told them that he had quoted his client a $5.75 million purchasing–leasing agreement, and quoted Gateway's Vice President, Mr. Del Giudice, as saying, "That's fine–we don't have any objection. We will cover you for the $250,000." Leonard said they all shook hands and he told them he would be back next week.

He came back to Washington on November 21, with Doyle and his counsel; Del Giudice, McGuire and their attorney represented Gateway.

Leonard said he again told them that his client, Aviateca, could not pay any commission and that they would have to protect him for his $250,000 fee–he said that the Gateway people told him they were going to try to sell the airplane to the first one who showed up with $5.5 million, and that they would help him find financing for Aviateca–that they had good relationships with the Bank of America in California.

Leonard said Gateway agreed to raise the purchase price from $5.5 million to $5.75 million, and to pay him a fee of $250,000 if he sold the B–727 to Aviateca–if they were to sell to any other line, he would not get anything.

Doyle said the conversation between Leonard and the Gateway people was very casual–he stated Del Giudice said the figure did not bother him and it would be added to the price of the airplane. Ramos was not at the meeting on the 21st–he said Leonard mentioned on the 16th that he wanted approximately $250,000—Del Giudice replied: "I don't care how much you are going to

get—what we do care is that we get $5.5 million."

Leonard said that he requested that something be put in writing—that Del Giudice dictated and gave him the requested letter offering to sell the aircraft for immediate delivery for $5.75 million, including equipment for a quick change between passenger and cargo configuration.

The record shows that Steven Baumgart did introduce Dr. Leonard to the Bank of America Leasing in order to help him obtain the necessary additional financing needed to purchase the aircraft—that the Bank of America discussed the matter with Dr. Leonard but refused to enter into a joint venture with him—they said, however, that they would purchase the aircraft for lease to Aviateca.

Shortly after the November 21 meeting, Dr. Leonard entered into a joint venture agreement with ICS–Diversified, Inc. to purchase the aircraft from Gateway and for its lease to Aviateca. He told them he had made the necessary arrangements to purchase the aircraft from Gateway for $5.5 million and for leasing it to Aviateca. If the deal went through, Dr. Leonard was to receive generous monthly commissions from ICS—he assured them that he was not going to receive commissions from anyone else.

Dr. Leonard and the officers of ICS and Aviateca all went to New York to arrange for the necessary financing with the National Bank of North America—although McGuire, the President of Gateway, went to New York at the same time, Dr. Leonard was very careful in preventing him from meeting any of the Aviateca officials.

When the requested financing was refused, ICS' and Leonard's joint venture did not purchase the aircraft.

Gateway's contract for the purchase of the aircraft from Charlotte called for settlement not later than January 20, 1979. When the ICS offer to purchase fell through, they became fearful that their $800,000 deposit might be forfeited if they did not complete their purchase.

McGuire, the President of Gateway, immediately contacted Burt Agardy and asked him if Aviateca was interested in buying or leasing the airplane.

Agardy got in touch with the Aviateca people in Guatemala and arranged for McGuire to meet with Colonel Sosa on January 8, 1979.

The negotiations took some 4½ days before a lease agreement was consummated between Gateway and Aviateca. The parties worked from draft leases provided by Gateway, Agardy and Aviateca—Dr. Leonard did not attend this meeting nor participate in the negotiations, although he was invited to do so by Ramos. Instead, he telephoned McGuire in Guatemala and told him that he had another organization willing to purchase the aircraft—when McGuire said he was not interested, Leonard threatened to disrupt his negotiations with Aviateca.

It is quite clear from this evidence that Dr. Leonard and/or his wholly–owned corporation, Safeco Leasing, Inc. never sold nor leased Gateway's B–727 to Aviateca—he was not the procuring broker—he did not put McGuire in touch with Colonel Sosa—Burt Agardy did.

He was, as he aptly put it, a "hustler"—when he learned from his friend, Ramos, that Aviateca was interested in leasing a B–727, he tried to cut himself in on the deal—he formed Safeco, his wholly–owned leasing company, and had his friend, Doyle, set up a meeting with Gateway on November 16 to buy its B–727 for $5.5 million—he first attempted to buy the aircraft through a joint venture with the Bank of America—then as a joint venture with ICS–Diversified, Inc.

He told the ICS people that he had made all the necessary arrangements to lease the aircraft to Aviateca on a cost basis of $5.75 million—it was not clear from the evidence what, if anything, he told the Bank of America.

Although these joint ventures could not be financed, he still claimed as late as January 9, 1979 that he had another organization that was willing to buy the aircraft.

This uncontradicted evidence is totally inconsistent with his claim that Gateway oral-

ly agreed to pay him a fee of $250,000 if the aircraft was ever sold to or leased by Aviateca.

An express contract, among other things, whether it be written or oral, must be "definite and certain."

The claimed oral agreement in this case was ambiguous to say the least.

When asked to tell what the agreement was, Dr. Leonard testified, "Both parties [Safeco and Gateway] were going to make arrangements for the financing * * * I had to be protected for the $250,000 commission because * * * I was not getting any money from Aviateca * * *. They [Gateway] were going to pay me $250,000."

Leonard said he wanted something in writing–Del Giudice dictated and wrote the letter dated September 21, 1978, and asked Leonard: "Is that OK with you?" Leonard said "Fine."

This letter falls far short of clarifying and/or confirming Leonard's claimed oral agreement–it does not even mention the claimed $250,000.

Surely, Dr. Leonard's lawyer would have required a more definitive letter had Gateway orally agreed to pay his client $250,000 when and if they sold or leased the B–727 to Aviateca.

Although this lawyer did not try this case, neither he nor Mr. Gilliam, who was present on November 16, were called as witnesses to confirm the claimed oral agreement.

As has been said, the burden was on the plaintiff to prove his claim by a preponderance of the evidence–Dr. Leonard's testimony and the Doyle and Ramos limited corroboration was not enough.

Therefore, this suit must be DISMISSED at the cost of the plaintiff, and

IT IS SO ORDERED.